# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RECEIVED

Case Number: MRL)   **23-5119**

DELORAH S. HUNT, Clerk

Case Name: _Jon Hall v. Donald Trump, et. al._,

Name: __Jon Douglas Hall__

Address: __R.M.S.I. Unit 2-A-204__     7475 Cockrill Bend Boulevard

City: __Nashville__     State: __Tenn.__  Zip Code: __37209-1048__

## PRO SE APPELLANT'S BRIEF

**Directions:** Answer the following questions about the appeal to the best of your ability. Use additional sheets of paper, if necessary, not to exceed 30 pages. Please print or write legibly, or type your answers double-spaced. You need not limit your brief solely to this form, but you should be certain that the document you file contains answers to the questions below. The Court prefers short and direct statements.

Within the date specified in the briefing letter, you should return one signed original brief to:

**United States Court of Appeals For The Sixth Circuit**
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio   45202-3988

1. Did the District Court incorrectly decide the facts?     ☒ Yes     ☐ No

If so, what facts?

> The appellant Jon Hall is not incompetent and capable of making his own decisions regarding the civil rights action he filed on his own behalf.
> The Court allowed Hall's attorney's & Guardian to usurp the core issues of his complaint, change the issues, and allowed unconstitutional conditions of confinement causing prolong solitary confinement to continue against experts advice.

2. Do you think the District Court applied the wrong law?     ☒ Yes     ☐ No
If so, what law do you want applied? (KJV Hebrews 6:16-18; and Deuteronomy 1:11; 16-18, MORE?)

> The district court illegally mediated the case. No law was applied. I would for both state and federal constitutional laws to be applied to my case, and the issues involved, in accordance to counsel's expressed declaratory claim for injunctive relief. U.S. Const. Art. III, § 2 "standing." See e.g. Maryland Casualty Co. v. Pacific Coal & Oil Company, 313 U.S. 273, 61 S.Ct. 510 (1941) (A substantial controversy... having adverse interests of sufficient immediacy and reality to warrant declaratory Judgment) Porter v. Clarke, 923 F.3d @ 362 (2019) (No Penological objective) Gonzalez v. Abbott 967 F2d @ 1504 (1992) (A void record cannot be a legal cause of imprisonment - Miscarriage of Justice).

6CA-70
03/10

Page 1 of 2

3. Do you feel that there are any others reasons why the District Court's judgment was wrong?

☒ Yes ☐ No  Argument 4; The Court Failed to Analyze Claim (Brief pg. 23).
If so, what are they? Ecclesiastes 7:7; Romans 1:20 (Res Gestae - Things Made).

The district Court should have resolved my State jurisdictional issues once Document 86 was entered on my behalf by a Federal Public Defender. The facts and law support the fact that the trial court did not have change of venue cause affidavits to change the venue, depriving the Madison County Court jurisdiction over the subject-matter, under T.C.A. § 40-13-210; and T.R.A.P., Rule 13.

4. What specific issues do you wish to raise on appeal?

On 03-16-23, I presented the issues for appeal at document 146, PageID, 1660, however, the district court did not respond to claims in her Order.

1. The settlement agreement made by Hall's Attorney's and Guardian Ad Litem was in violation of the due process clause of the Constitution of the United States
2. Was it proper for Mr. Hall's counsel to make an agreement that allowed the T.D.O.C. to deny all claims with no admission of liability?
3. Was Sherrod, Roe, Voigt, and Harbison, (S.R.V.H.) unduly influenced by the Governor's appointment of T.D.O.C. interim Commissioner Lisa Helton?
4. T.D.O.C. Policy 503.03 was improperly adopted by the Department of Correction and illegitimately approved by the quasi "Policy Makers?"
5. Is Mr. Hall likely to succeed on THE merits of his case?
6. Was Mr. Hall unduly injured by Lisa Helton's selection of interimCommissioner?

Doc. Evidence 86, & 141, Pgs. 8-17, show by clear and convincing evidence, that but for Constitutional error, T.C.A. § 40-13-210, No Reasonable Jurist would have Found the Madison County trial court could Have Found the Appellant eligible to be tried or convicted, Schlup v. Delo 115
The Trial Technical Record (Madison Co No. 96-504) is Void. S. Ct @ 868 N.48, 513

5. What action do you want the Court of Appeals to take in this case?  U.S. @ 329, N.48 (1995).

1. Reverse and remand case for declaratory order.

2. Reverse and remand case for constitutional violations.

3. Reverse and Remand with order to follow P.L.R.A. concerning any type of fee

I certify that a copy of this brief was sent to opposing counsel via U.S. Mail on the 12th day of July , 2023.

Signature (Notary not required)

Jon Hall

# DECLARATION OF INMATE FILING

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT
### AT CINCINNATI

Jon Hall, Appellant,

**RE:** Appellate Case No: <u>23-5119</u>

Trial Case No: <u>3:19-cv-00628</u>

Donald Trumpet.al., Defendants,

I am an inmate confined in an institution. Today, on the 12th day of July 2023, I am depositing this Appellate Brief in the institution's mail system. It is being mailed first class, postage prepaid by the appellant, Jon Hall himself.

I swear and aver that I have sent a true and exact copy of the foregoing appellate brief, via first class mail, postage prepaid to Dawn M. Jordan, at the office of the Attorney General for the State of Tennessee, located at 500 Dr. Martin Luther King Blvd., P.O. Box 20207, Nashville, Tennessee 37202-0207, this the 12th day of July 2023.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability, knowledge and belief pursuant to 28 U.S.C.A. §1746.

Signed on the 12th day of July 2023.

_____

Jon Hall #238941
R.M.S.I. Unit 2 A-204
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209-1048

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

Jon Hall,

    Appellant,

                      Sixth Circuit Court Case: No. 23-5119

Vs.

                      Trial Court Case: No. 3:19-cv-00628

Donald Trump et. al.,

    Appellees.

## BRIEF OF THE APPELLANT JON HALL

## ORAL ARGUMENT REQUESTED

Jon Hall # 238941
R.M.S.I. Unit 2 A-204
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209-1048

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Jon Hall,                        )

                             )

    Appellant,               ) Sixth Circuit Court Case: No. 23-5119

                             ) Trial Court Case: No. 3:19-cv-00628

Vs.                           )

                             )

Donald Trump et. al.,        )

                             )

    Appellees.               )

# BRIEF OF THE APPELLANT JON HALL

# ORAL ARGUMENT REQUESTED

Jon Hall #238941

R.M.S.I. Unit 2 A-204

7475 Cockrill Bend Blvd.

Nashville, Tennessee 37209-1048

## DISCLOSURE STATEMENT

The appellant, Jon Hall would state and aver that he is a Pro Se complainant in the above styled case. He is filing this brief Pro Se, without the benefit of counsel for his representation and discloses this information pursuant to Federal Rules of Appellate Procedure 26.1.

The appellant is a prisoner in the Tennessee Department of Corrections, presently sentenced to Death and housed at the Riverbend Maximum Security Institution located in Nashville, Tennessee. The appellant does not have the benefit of West Law or Lexis to help him up date the cases he is using in this brief. The prison library's newest books date back to 2009. Moreover, in *__Middlebrooks v. Helton__, 2023 WL 4002470, \*3-4, (M.D. Tn. 06-14-23)*; The court found that prisoners do not have a constitutional right to defendants compliance with any particular R.M.S.I. or policy regarding library access. Thus demonstrating T.D.O.C. Policy 503.03 addressing Unit 2 programs, is not binding and an illusory contract.

## CERTIFICATE REGARDING COMPLIANCE WITH WORD COUNT LIMITATIONS

I certify that the foregoing Appellate Brief contains 11,644 words, which does not exceed the 13,000 thousand word count allowed by rule 28 Federal Rules of Appellate Procedure for appellate briefs. This Brief complies with the Order of this Court.

Jon Hall, appellant Pro Se.

**I**

# TABLE OF CONTENTS

Disclosure Statement...................................................................................I

Table of Contents.......................................................................................II

Table of Authorities..................................................................................III

Judicial Statement....................................................................................VII

Statement of Issues presented for review...............................................IX

Statement of the Case...............................................................................01

Summary of the Argument........................................................................06

Argument...................................................................................................08

Issue I.) The settlement agreement made by Hall's Attorneys and Guardian Ad Litem was in violation of the due process clause of the Constitution of the United States. ...............08.

Issue II Was Sherrod, Roe, Voigt, and Harbison, (S.R.V.H.) unduly influenced by the governor's appointment of T.D.O.C. interim commissioner Lisa Helton?...........................14

Issue III. Was it proper for Mr. Hall's counsel to make an agreement that allowed the T.D.O.C. to deny all claims with no admission of liability?......................................................16

Issue IV.   T.D.O.C. Policy 503.03 was improperly adopted by the Department of Corrections and illegitimately approved by the quasi "Policy Makers?".......................18

Issue V. Is Mr. Hall likely to succeed on the merits of his case?............................................23

Issue VI. Was Hall unduly injured by Lisa Helton's selection as interim Commissioner?......................................................................................................................26

Conclusion..................................................................................................28

# Table Of Authorities

## State Case Citations

*Cone v. Bell*, 492 F.3d. @ 766, 129 S.Ct. @ 1779 (2009)…………………………29

*Cosby*, 2005 WL 2217072, at * 2, n. 5 (Tn.App. 9/15/05)……………………………..………23

*Dep't of Mental Health v Allison*, 833 S.W.2d 82, 85 (1982)………………………….……………22

*Ellis v. Duggan*, 644 S.W.3d 85, 114-15 (Tn.App. 2021)……………………………27

*Hall v. State*, 2005 WL 22951 @ 3, 12, 14-18………………………………………….....09

*Nobes v. Earhart*, 769 S.W.2d @ 874 (Tn.App. 1988);…………………………….…17,.27

*State v. Nichols*, 877 S.W.2d. 722, 728 (1994)………………………………………29

*Tn. Cable TV v Tn. Public Serv. Comm'n.* 844 SW2d @ 168  (Tn. 1992)………………..22,.23

## State Statutes

T.C.A. § 4-3-603……………………………………………………………………….....22

T.C.A. § 4-3-606……………………………………………………………………….....22

T.C.A. § 4-5-101 et.seq., (U.A.P.A)…………………03,.05,.06,.12,.14,.16,.18,.19,.21,.23,.24,.27

T.C.A. § 4-5-102(10)(A)……………………………………………………………...…21

T.C.A. § 4-5-106(b)………………………………………………………………….....21

T.C.A. § 4-5-211……………………………………………………………....03,.23,.30

T.C.A. § 4-5-216……………………………………………………………….03,.19,.23

T.C.A. § 4-5-322 (h)(1, 3, & 4)…………………………………………………………23

T.C.A. § 16-1-105)……………………………………………………...………07,.13

T.C.A. § 16-3-405……………………………………………………………….29,.30

T.C.A. § 29-21-101…………………………………………………………………30

T.C.A. § 40-34-103 (c)……………………………………………………03,.06,.15,.29

T.C.A. § 41-1-108……………………………………………………………….03,.18,.22

T.C.A. § 39-12-101…………………………………………………………………29

T.C.A. § 39-13-101…………………………………………………………………29

T.C.A. § 39-13-501…………………………………………………………………29

T.C.A.§ 39-13-506…………………………………………………………………29

T.C.A. § 39-13-507…………………………………………………………………29

T.C.A. § 41-21-402……………………………………………………………………23

T.C.A. § 40-34-105 (c)……………………………………………………03,.19,.30

T.C.A. § 40-34-103 (c)…………………………………………………………………19

T.C.A. § 40-34-105 (b)……………………………………………………………....06,.15

T.C.A. § 41-21-202……………………………………………………………….03,.19

T.C.A. § 41-21-402,…………………………………………………………02,.20,.21

T.C.A. § 41-21-818…………………………………………………………….03,.18,.22

# State Rules of Court

*Tennessee Supreme Court Rule 8, ABA Rule 1.7*.....................................................14
*Tenn.Crim.P. Rule 18*...............................................................................................29
*Tenn.Crim.P. Rule 21*...............................................................................................29

# T.D.O.C. Policy and Procedures

*T.D.O.C. Policy 401.08, VI. F. 1*..........................................................................20,.22

*T.D.O.C. Policy and Procedure 503.03*...........................................................................
.............................VII,.03,04,.05,.06,.07,.08,.12,.13,.14,.16,.18,.19,.20,.23,.25,.27,.29,.30

# Tennessee Constitution

*Tennessee Constitution Article 1, § 9*.................................................................29

# Federal Case Citations

<u>*Bell*</u> *441 U.S. at 547*........................................................................................22,.24
<u>*Bout*</u>, *860 F.Supp.2d at 311*........................................................................................24
<u>*Burns v. Robertson County*</u>, *192 F.Supp. 3d. 909, 920-22 (M.D. Tenn. 2016)*.............07,.18
<u>*Children Health Defense v. Food and Drug Administration*</u>, *573 F.Supp. 3d. 1224, 1241 (E.D. Tn. 2020)*.................................................................................................24
<u>*Chrysler Corp.*</u>, *99 S.Ct. 1705, 1721 (1979)*..............................................15,.19
<u>*Farmer v. Brennon*</u>, *511 U.S. 825, 843 n. 8, 114 S.Ct. 1970, 1982, n. 8 (1994),*.........05,.18,.25
<u>*Flagner*</u>, *241 F.3d at 483*........................................................................................24
<u>*For Seniors Help v. Westchester Fire Insurance Co.*</u>, *515 F.Supp.3d 787, 801 (M.D. Tn. 2021.)*..........................................................................................................15
<u>*Friedman*</u>, *573 F.Supp. 3d 1221, 1230-31 n. 7 (M.D. Tn. 2021)*..........................18,.24,.25
<u>*Gardner v. Parsons*</u>, *874 F.2d 131, 142 (3ʳᵈ Cir. 1989)*.......................................04,.26
<u>*Greason*</u>, *891 F.2d. 829, 830 @ n. 20 (1998)*.........................................05,.06,.16
<u>*Groseclose v. Dutton*</u>, *609 F.Supp. 1432, 1436 (Tenn. 1985)*.............................19,.20
<u>*Groseclose II*</u>, *788 F2d. 351, 361 (6ᵗʰ Cir. 1986)*.............................................20,.28
<u>*Gotti*</u>, *755 F.Supp. at 1164*........................................................................................22
<u>*Grubbs*</u>, *552 F.Supp. 1052, 1060 (M.D. Tn. 1982)*...........................................19,.21
<u>*Grubbs*</u>, *821 F.Supp. 496, 504-05 (Tn. 1993)*.................................................20,.28
<u>*Hall v. Mays*</u>, *7 4th 433, 442 (6ᵗʰ Cir. 08/03/21)*.............................................05,.09
<u>*Hardy*</u>, *618 F.Supp. 3d 671, 692-93 Hn. 10 (M.D. Tn. 2022)*................................18,.25
<u>*Harmelin v. Michigan*</u>, *501 U.S. 957, 973-976 (1991)*.........................................30
<u>*Henry Jones v. Mays*</u>, *No: 3:21-cv-00666; 2022 WL 3651964, @ *10. (August 24, 2023.)*.....20
<u>*Hodge v. Lisa Helton*</u>, *No. 22-1440-III, Davidson County Tennessee Chancery Court, filed 10/28/22*..........................................................................................................14

_Hugueley v. Tony Parker, et. al.,_ Case No. 3:19-cv-00598.....................01,.05,.10,.13,.16,.26

_Hugueley v Parker,_ 2020 WL 4753845 *6 (08/17/20).................................................03,.05

_In re Medley,_ 134 U.S. 160, 174 (1890) ...............................................................................30

_Jon Hall v. Carpenter,_ 2015 WL 1464017* 19 (M.D. Tenn. 03/30/15)........................05,.09

_Jon Hall v. Donald Trump,_ 2020 WL 1061885 * 6 ...........................................................02

_Jon Hall v. Donald Trump,_ 2019 WL 5728097 (M.D. Tenn. 11/02/19)...........................01

_Jon Hall v. Donald Trump et.al.,_ No. 3:19-cv-00628...........................................01,.10

_J.H.,_ 951 F.3d at 718 ...............................................................................................22

_J.H. v. Williamson County Tennessee,_ 2016 WL 7230506 *2 (M.D. Tenn. 12/14/16)...........04

_Kelly v. Brewer,_ 378 F.Supp. @ 451 n.12 (1974)..............................................................21

_Lindsey v. Washington,_ 301 U.S. 397, 401, 57 S.Ct. 797, 799 (1937)........................13,.28

_Mackey v. Dyke,_ 111 F.3d. 460, 462 (6th Cir. 1997)...........................................................25

_Mandela v. Campbell,_ 978 SW2d 531, 532, n. 2 (Tn. 1998).............................................21

_Martin v. v. Dep't of Corrections,_ 424 Mich. 553, 562-65, 384 N.W.2d 392 (1986)..............22

_McClary v. Kelly,_ 87 F.Supp.2d 205, 214 (2000)..............................................................28

_Middlebrooks v. Helton,_ 2023 WL 4002470, *3-4, (M.D. Tn. 06-14-23)............................I

_Miller v. Calhoun City,_ 408 F.3d. 803, 819 (6th Cir. 2005)...............................................07

_Occupy Nashville v. Haslam,_ 949 F.Supp.2d 777, 794-95, & 803 (Tn. 2013)...20,.23,.25,.27,.28

_Reid v. Lee,_ 597 F.Supp.3d 1177, 1180-81 (M.D. Tn. 2022).............................................20

_Ross v Blake,_ 136 S.Ct. 1850, 1859 (2016).......................................................................03

_Sandin v Conner,_ 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)..................................25

_Seniors Help v. Westchester Fire Insurance Co.,_ 515 F.Supp.3d 787, 801 (M.D. Tn. 2021.)....17

_U.S. v. Dyess,_ 291 F.Supp.2d 493, 497 (2002)...............................................................15

_U.S. v. Taylor,_ 21 F.4th 94, 100-101 n. 3 & 6 (2021)......................................................10

_Whitney v. Brown,_ 882 F.2d 1068, 1074 (6th Cir. 1989)...........................................22,.24

_Williams v. Mehra,_ 186 F.3d 685, 689 (6th Cir. 1999)................................................VII

## Federal Statutes

_18 U.S.C.A. § 3729-3733_ ............................................................................................07

_28 U.S.C.A. § 1291_ ..................................................................................................VII

_28 U.S.C.A. § 2201_ ...................................................................................................IX

_28 U.S.C.A. § 2202_ ...................................................................................................IX

_28 U.S.C.A. § 1331_ ................................................................................................VII

_28 U.S.C.A. § 1367_ ................................................................................................VII

_U.S.C.A. 28 § 1915A,_ ...............................................................................................01

_28 U.S.C.A. § 1915 (e)(2)_ .........................................................................................01

_28 U.S.C.A. § 1651_ ...................................................................................................IX

_42 U.S.C.A. § 1983_ ...............................................................VII,.01,.02,.03,.13

_42 U.S.C.A. § 1997e,_ ................................................................................................01

_42 U.S.C.A. § 1997 (f)_ .............................................................................................07

_P.L.R.A._ ..........................................................................................................13,.17,.26

_P.L.R.A.'s 42 U.S.C.A. § 1997 (d)(2)_ ........................................................................07

_42 U.S.C.A. § 1997 § (f)_ .........................................................................................13

_P.L.R.A.'s 42 U.S.C.A. § 1997g_ ...............................................................................06

V

*42 U.S.C.A. § 1988*............................................................................17

## Federal Rules

*Federal Rules of Evidence 601*...............................................................10
*Fed.R.Civ.P., Rule 17(C)*......................................................................12

## Federal Constitutional Amendments

*Art. 3 § 2 (3)*.............................................................................VII
*U.S.C.A. 8th Amendment*......................................................................06
*14ᵗʰ Amendment due process rights*...........................................................09

## Universal Declaration of Human Rights (1948).

*Article 6*....................................................................................09
*Article 12*...................................................................................09
*Article 18*...................................................................................09
*Article 19*...................................................................................10

## Other Citations

***Death Row. Washington University Journal of Law & Policy, Citation;*** <u>Stuart Grassian, Psychiatric Effects of Solitary Confinement</u>, 22 Wash, U.J.L. & Pol'y 325 (2006), http://openscholarship.wustl.edu/law_journal_law_policy/vol22/iss1/24..................................07

<u>***Hampton v. Dep't. of Corrections***</u>***, 336 N.J. 520, 527-530, 765 A.2d 286, 289-90 (N.J. A.D. 2001)***...............................................................................21,.22

***Martin Horn Former New York Commissioner of Corrections Expert Report. (D.E. 146 PageID# 1697-98***..........................................................................20,.26

<u>***Massey v. Secretary, Dep't of Public Safety and Correctional Services***</u>***, 389 Md. 496, 523-24, 886 A.2d 585, 601-02 (Md. 2005)***..........................................................21

## Judicial Statement

In ***Williams v. Mehra, 186 F.3d 685, 689 (6th Cir. 1999);*** this court said; a court has

jurisdiction ***Under 28 U.S.C.A. § 1291,*** to hear only cases based upon a "final decision" of the

district court. Pursuant to ***28 U.S.C.A. § 1367,*** Pendent Jurisdiction, this Honorable Court has

jurisdiction under U.S.C.A. Constitution ***Art. 3 § 2 (3)*** to hear and adjudicate every issue

presented in this brief. The appellant Jon Hall filed a ***42 U.S.C.A. § 1983*** civil rights complaint in

the Federal Middle District Court of Tennessee to redress the issues of his confinement pursuant

to ***T.D.O.C. Policy and Procedure 503.03.*** Because the appellant lives in Nashville, Tennessee,

the Middle District Federal Court has jurisdiction over the subject matter as well as jurisdiction

over the person of the appellant. The appellant Jon Hall lives in the State of Tennessee which is

in the Sixth (6th) Circuit Courts Jurisdiction. Title ***28 U.S.C.A. § 1331,*** Federal Question. The

appellant filed a Federal Complaint in the Federal Court for Middle District of Tennessee to

redress unconstitutional issues. The appellant, Jon Hall does not agree with the settlement made

in the Federal District Court, and because of this disagreement, is appealing the issues contained

in this Brief to the Appellate Court. The Order from the Federal District Court that is being

appealed was filed on the 11th day of April 2022; (D.E. 124). The appellant filed a Motion to

Dismiss Fiduciary Agents due to Breach of Contract on the 22nd day of April 2022; (D.E. 125).

The appellant filed a motion to Withdrawal Settlement Agreement due to breach of contract on

the 13th day of October 2022; (D.E. 126). On the 13th day of October 2022, the appellant filed a

Motion, rules improperly adopted are void; (D.E. 127). On the 13th day of October the appellant

filed a notice; (D.E. 128). On the 13th day of October 2022, the appellant filed a Statement from

his Prisoner Trust Fund Account; (D.E. 129). The Federal District Court filed an Order making

**VII**

the defendants respond to the appellants' motions on the 18th day of October 2022; (D.E. 130). On the 26th day of October 2022, a Notice of Appearance was filed by John Ross Glover; (D.E. 131). On the 1st day of November 2022, the appellant filed a Notice of Imminent Danger; (D.E. 132). On the 10th day of November 2022 a response was filed by the defendants concerning Documents 125 and 126; (D.E. 133). On the 7th day of December, the appellant filed a motion for default... (D.E. 134). On the 14th day of December 2022, the Federal District Court Denied D.E.'s 125, 126, and 127, and Ordered the defendants to answer D.E. 134 directly to the appellant; (D.E. 135). On the 9th day of January 2023, the defendants filed a Response to D.E. 134; (D.E. 136). On the 9th day of January a motion to file sealed documents was entered; (D.E. 137). On the 9th day of January 2023, Sealed Documents were filed by the defendants; (D.E. 138). On the 10th day of January 2023, an Order was granted concerning D.E. 138; (D.E. 139). On the 10th day of January 2023, an Order denying the appellants motion of D.E. 134, was filed by the Federal District Court; (D.E. 140). On the 12th day of January 2023, the appellant filed a Motion to Alter and Amend the Order filed in the Federal District Court; (D.E. 141). On the 13th day of January 2023, an order denying the appellants Motion to Alter and Amend was filed; (D.E. 142). On the 24th day of January 2023, a motion to Strike Insufficient Defense by Jon Hall was filed by the Federal District Court. (D.E. 143). On the 10th day of February 2023, the appellant filed a Notice of Appeal as to D.E. 140. (D.E. 144). On the 13th day of February 2023 the appellant was issued the Appellate case number of 23-5119 concerning D.E. 140. (D.E. 145). Motion to proceed as a pauper and petition for permission to appeal was filed by the appellant on the 16th day of March 2023. (D.E. 146). Pursuant to the time line issued by this Honorable Court

**VIII**

this present Brief is due by the 20th day of July 2023. This Honorable Court has jurisdiction pursuant to *28 U.S.C.A. § 1651*, all writs act; *28 U.S.C.A. § 2201* and *28 U.S.C.A. § 2202*, to issue both declaratory and injunctive relief.

## Issues Presented For Review

**Issue I.) The settlement agreement made by Hall's Attorneys and Guardian Ad Litem was in violation of the due process clause of the Constitution of the United States.**

**Issue II Was Sherrod, Roe, Voigt, and Harbison, (S.R.V.H.) unduly influenced by the governor's appointment of T.D.O.C. interim commissioner Lisa Helton?**

**Issue III. Was it proper for Mr. Hall's counsel to make an agreement that allowed the T.D.O.C. to deny all claims with no admission of liability?**

**Issue IV.    T.D.O.C. Policy 503.03 was improperly adopted by the Department of Corrections and illegitimately approved by the quasi "Policy Makers?"**

**Issue V. Is Mr. Hall likely to succeed on the merits of his case?**

**Issue VI. Was Hall unduly injured by Lisa Helton's selection as interim Commissioner?**

IX

## Statement of the Case

The appellant Jon Hall respectfully notifies this Honorable Court that he has used initials in the place of actual names. The following names have been initialized for the purpose of this Brief: S.R.V.H. = Sherrod, Roe, Voigt, & Harbison; R.M.S.I. = Riverbend Maximum Security Institute; T.D.O.C. = Tennessee Department of Corrections; **P.L.R.A.** = Prison Litigation Reform Act; D.E. = Document Evidence; **U.A.P.A.** = Uniform Administrative Procedures Act;

On July 12, 2019, Stephen Hugueley filed a condition of confinement case on Tennessee's death row.***Hugueley v. Tony Parker, et. al., Case No. 3:19-cv-00598***; (D.E. 1, PageID #1-19). Mr. Hugueley won summary judgment. (D.E. 75, M.D. Tennessee 08/17/20).

On July 24, 2019, appellant, Jon Hall, an inmate on death row in Riverbend Maximum Security Institution, filed a civil rights action under ***42 U.S.C.A. § 1983*** (Document No. 1, PageID # 1 -51). On September 3, 2019, this case was moved to United States District Court Judge, for initial review as a case related to ***Jon Hall v. Donald Trump et.al., No. 3:19-cv-00628;*** to decide if Mr. Hall's case met the Prison Litigation Reform Act requirements under ***28 U.S.C.A. § 1915 (e)(2) and U.S.C.A. 28 § 1915A,*** and ***42 U.S.C.A. § 1997e,*** and Ordered that appointed counsel must file an amended complaint within 30 days of appointment. (Document No. 7, 9/03/19; PageID 195-198).

On October 02, 2019, the Court ORDERED, "the Clerk of Court to seek counsel willing to amend and litigate his claim regarding his prolonged detention in solitary confinement and related constitutional deprivations;" ultimately deciding plaintiff stated a colorable claim for the screening process. (Document No. 8; 10/02/19; PageID # 199-201) ***Jon Hall v. Donald Trump, 2019 WL 5728097 (M.D. Tenn. 11/02/19).***

1

On March 05, 2020, Judge Trauger, issued a Memorandum and Opinion, determining that the Defendant Tony Parker's, Motion to Dismiss, is denied, and then granted plaintiff's Fourth Amended Complaint (Document 36; 03/05/20; PageID # 412-418). ***Jon Hall v. Donald Trump, 2020 WL 1061885 * 6*** (M.D. Tn. 03/05/20). Under B (Analysis) of this opinion, the Court refers to (D.E. No. 30, at 2 ***Jon Hall v. Donald Trump, 2020 WL 1061885 * 2 (M.D. Tenn. 03/05/20)*** Analysis 5, PageID # 349), finding 'the relief the plaintiff seeks is systematic in nature and involves changes to the policies and procedures set and controlled by Defendant Parker (D.E. No. 30, at 3 8, PageID # 350); Defendant Parker, as Commissioner, 'provides final approval of rules applicable to death row inmates and is ultimately responsible for T.D.O.C.'s policies and Procedures, as well as for funding necessary to provide resources to prisons, prison personnel, and ultimately to prisoner's. He has the authority to make changes in [the plaintiff's] procedures and living conditions, and is the only Defendant with the authority to provide all of the systematic changes and resources [the plaintiff] seeks in this case." (D.E. No. 30, at 4 § 13, PageID # 351).

On March 20, 2020, Bill Harbison, filed his Fourth Amended Complaint, alleging Defendants have violated the Americans with Disabilities Act and ***T.C.A. § 41-21-402***, that prohibits T.D.O.C. from holding an inmate in solitary confinement for more than thirty days. (Document 41-1; filed 3/20/20, PageID # 456-585).

The Appellant relied on counsel's complaint requesting: (1) a ruling on Hall's legally vested rights after a prolong detention in solitary confinement; when Attorney Bill Harbison, explicitly promised: "to seek a declaration that the defendant's conduct violates ***42 U.S.C.A. § 1983***," in order to perform his duty to "seek injunctive relief as fashioned by this Court to address Mr. Hall's psychological and medical needs," caused by prolong and indeterminate

solitary confinement "The relief Mr. Hall seeks is systematic in nature and involves changes to policies and procedures set and controlled by Defendant Parker." (D.E. 41-1; 4th; filed 3/20/20; PageID # 458-459, § 10). This critical process was bypassed by the guardian's agreement, to overcome Hall's will and freedom of choice. But See: "Motion To Be Heard / Offer of Proof: Land of the Free," for purpose of access to court and defense against persecution and abuse of power, hatched by corporate agents misapplying illegally adopted policies that bypass the legislatures will using consent decrees. (D.E. 60, PageID # 646, § 8, & PageID 687.)

Mr. Hall gave notice in the beginning, that overriding *T.C.A. § 41-21-202* (classification), with *T.D.O.C. policy 503.03*, caused harm. This rule is not promulgated through the *U.A.P.A.* under *T.C.A. § 41-1-108, and T.C.A. § 41-21-818*, nor signed by Atty. General as required by *T.C.A. § 4-5-211*, and is void under *T.C.A. § 4-5-216*, and violate the separation of powers. (D.E. 1-9,  PageID # 101; CR-3004; 12/01/20). Its undisputed, that exhaustion of state remedies under T.D.O.C. / R.M.S.I. warden's administration is futile or a dead-end. *Hugueley v Parker, 2020 WL 4753845 *6 (08/17/20)* (Warden "curious" about why Halls grievance was deemed non-grievable. "The administrative process is so confusing and unworkable as a practical matter.") *Ross v Blake, 136 S.Ct. 1850, 1859 (2016)*. Thus, Hall's expressed standing objective, about Commissioner's failure to promulgate Rules, is ripe. Thus, the settlement agreement improperly circumvented Hall's grievance regarding the adoption of *T.D.O.C. Policy 503.03* outside the scope of legislation in violation of *T.C.A. § 40-34-103 (c)* (agreements; noticed: no first-degree murder can get a R.E.D. from solitary confinement under contract sentencing laws.) *T.C.A. § 40-34-105*.

The appellant, Jon Hall initiated the above styled *42 U.S.C.A. § 1983* civil rights complaint with the purpose of remedying the harm caused by the psychiatric effects of prolong

solitary confinement, governed by **T.D.O.C. Policy and Procedure 503.03** that violated his civil rights. It was not until the District Judge compelled mediation, that the issue Mr. Hall complained about was removed from contention, after the appellant complained that he wanted a declaratory judgment as well as an injunction as promised to him by appointed counsel. Mr. Hall was then given a Guardian Ad Litem to act in his stead without standing. This action was done in secret without any notice, knowledge or permission. **_Gardner v. Parsons, 874 F.2d 131, 142 (3rd Cir. 1989)._**

The mediation and bad faith settlement went forward without any in put by the appellant. The issue regarding the unconstitutional conditions created by **T.D.O.C. policy 503.03** was extinguished as a part of the settlement, and the case was subsequently dismissed without ever making a ruling on Mr. Hall's civil rights violations. These violations are still being violated this day. The creation of program cages is material evidence showing the merits of Mr. Hall's civil rights violation claim. This proves that he was illegally punished by indeterminate solitary confinement, without a rehabilitative purpose for his administrative confinement, warranting a declaratory rights determination.

Federal Public Defender attorney, Ms. Kelly Henry, obtained pictures that show the defendants lied about the rehabilitation cages. No party did anything about this situation to show that the appellant was not a liar when he and other inmates privy to the facts submitted affidavits alleging the defendants non-compliance as part of their official duty as appointed counsel in this matter. (D.E. 123-1 PageID @1530-31, RE: Bradley MacLean's duty); and (D.E. 134, PageID. #1512-1527 Five (5) Inmate affidavit(s) Re: Rehabilitation Cages). **_J.H. v. Williamson County Tennessee, 2016 WL 7230506 *2 (M.D. Tenn. 12/14/16)._**

Almost a year before Stephen Hugueley committed suicide, the defendants in the case filed for summary judgment and were denied, *Hugueley v. Tony Parker, 2020 WL 4753845* (M.D. Tn. 08/17/20) (*Hugueley v. Tony Parker, 3:19-cv-00598*; D.E. 75). The day Mr. Stephen Hugueley committed suicide; Judge Trauger issued an order scheduling a conference with the Mediator. (July 20, 2021; D.E. 120); *Hugueley v. Tony Parker,: 3:19-cv-00598*; starting a chain of events that should have lead to a trial, to prevent and address the risk of death row conditions of confinement. *Farmer v. Brennon, 511 U.S. 825, 843 n. 8, 114 S.Ct. 1970, 1982, n. 8 (1994)*, (Officials should be held liable when they have knowledge that put identifiable group(s) of prisoners at risk concerning their conditions of confinement.) *Greason, 891 F.2d. 829, 830 @ n. 20 (1998)*.

Jon Hall's case and Mr. Hugueley's case were operating in tandem at that time. Judge Trauger filed an order compelling mediation of both cases. It was this order that provoked Stephen Hugueley to commit suicide because the Mediators were not considering his claims for settlement. (*Hugueley 3:19-cv-00598*; D.E. 119 PageID #2128 – Mr. Hugueley's frustration with mediation tactics, no consideration of his requested relief filled with suicidal ideation, filed three (3) days before his suicide). After Hugueley's suicide, Counsel for Jon Hall made a false claim that he was incompetent and usurped his position by appointing him a Guardian Ad Litem, keeping him from having a voice or from governing the direction of his case. *Jon Hall v. Carpenter, 2015 WL 1464017* 19 (M.D. Tenn. 03/30/15)* (Incompetent claims are not credible and not supported by the evidence). *Hall v. Mays, 7 4th 433, 442 (6th Cir. 08/03/21)*.

This brief is a result of the actions, omissions, and rulings by the parties in the above styled action, trying to approve *T.D.O.C. Policy 503.03* without going through the *U.A.P.A.*

## Summary of the Argument

The appellant Jon Hall would respectfully incorporate the Statement of the Case in this Summary of the Argument submitted to this Honorable Court for its approbation.

The appellant, Jon Hall, asks this Court: whether consideration was given to T.D.O.C.'s UN-promulgated *Policy 503.03* through *U.A.P.A.*, used in Hall's illegal contract sentencing agreement (D.E. 123-1, PageID # 1328, II; Policy 503.03), governed by *T.C.A. § 40-34-103 (c)* (1st degree murder conviction exempt from contract sentencing); & *T.C.A. § 40-34-105 (b)* agreement arising under *P.L.R.A.*'s *42 U.S.C.A. § 1997g* [(a)]; will pass legal analysis scrutiny under unconstitutional conditions doctrine? Appellant says the agreement terms are outside the scope of Tennessee's legislative authority, and T.D.O.C.'s application of unauthorized *T.D.O.C. policy 503.03*, was ignored by quasi-policy makers to override prisoner's right to objective security classification factors. The supervisors approval of this policy was ill conceived and violated *U.S.C.A. 8th Amendment*; *Greason v. Kemp*, *891 F.2d. 829, 837, n. 18. (1990).*

When it became apparent that the appellant would not accept the mediated settlement, the Court made a ruling that a Guardian would be appointed to Hall for the sole purpose of Mediation and Settlement of the case. (D.E. 98 PageID # 1263-64.) This was *done in the appellants abstention* without regard to the appellants expressed issues. (D.E. 146 PageID. # 1678.)

The appellant filed several motions to redress the harm caused by the informal policy making as part of associational standing for death row prisoners. Inmates on death have suffered self-mutilation and suicide because of the prolonged conditions of solitary confinement. This was the sole purpose and personal interest in Mr. Hall's complaint. Serious Mental and Physical harm has been caused by the informal policymaking, already in place that has affected all of the

inmates on Tennessee's ***Death Row. Washington University Journal of Law & Policy, Citation;*** Stuart Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash, U.J.L. & Pol'y 325 (2006), http:// openscholarship.wustl.edu/law_journal_law_policy/vol22/iss1/24

    A genuine issue of material fact at issue exists as to whether the unauthorized ***T.D.O.C. Policy 503.03*** provisions still needs consideration regarding Halls claim of unauthorized punishment. The prolonged solitary confinement in combination with the negligent of medical and mental health care provided to prisoners, show the policy makers are grossly incompetent, or inadequate so as to prove deliberate indifference. ***Burns v. Robertson County, 192 F.Supp. 3d. 909, 920-22 (M.D. Tenn. 2016).*** The record before the court would support that finding. ***Miller v. Calhoun City, 408 F.3d. 803, 819 (6th Cir. 2005).*** Appellant submits that a reasonable jury should have been commissioned to decide the merits of his action, rather than circumventing Hall's right to participate under ***42 U.S.C.A. § 1997 (f)***; ***T.C.A. § 16-1-105)*** to address his interests, denied by an ex-parte conference hearing, violating and overriding his will to make his own decisions, by guardian Bradley MacLean. He made an unauthorized settlement agreement on Hall's behalf, in a collective bargaining fashion to extinguish Mr. Hall's expressed grievances, and deny him his Declaratory Judgment. (D.E. 146, pageID 1644, & 1648; 7/27/21). Terms of the agreement ratified over Hall's objection, benefited: (1) T.D.O.C.'s own self-dealing lucrative financial interests; (2) provided for guardian's lifetime contract benefits to usurp a competent persons will, and decision-making, in violation of ***18 U.S.C.A. § 3729-3733***; and (3) Hall's counsel S.R.V.H., self-dealt attorney fee benefits exceeding over 25% of ***P.L.R.A.'s 42 U.S.C.A. § 1997 (d)(2)***, overlooking T.D.O.C.'s unauthorized selective, multiple punishment scheme discriminately applied to Tennessee's death row. Thus, causing mental illness to prisoners

7

serving inordinate, prolong detention in solitary confinement conditions, creating a serious risk of injury, in violation of double jeopardy, and cruel and illegal punishment standards.

## ARGUMENTS

**I.) The settlement agreement made by Hall's Attorneys and Guardian Ad Litem was in violation of the due process clause of the Constitution of the United States.**

The appellant Jon Hall submits that he was taken out of any adversarial processes concerning his case when he was appointed a guardian. The issues complained of by the appellant regardless of the requested mediation by the court, were changed, never adjudicated, nor addressed in any way. Shortly after Mr. Hugueley committed suicide, counsel notified Mr. Hall, that "on July 26, 2021 (without any prior notice provided by counsel to plaintiff, or Hall's presence at hearing); Judge Trauger, granted a Motion for Appointment of Guardian Ad Litem, appointing Bradley Maclean, only for mediation and settlement. (Document 98; PageID # 1263-64). In short, counsel secretly moved the court to have a guardian appointed to Hall, to stave off effective review and relief on Mr. Halls claims. This allowed the court to ignore the actual issues the appellant had filed in his complaint and combine his case with the deceased Stephen Hugueley's case in order to derail his declaratory order concerning the legality of T.D.O.C.'s policies. Appointing the appellant a guardian kept him silent, and the attorneys for the appellant were able to inform the court that he was not being held in solitary confinement, when in truth he was being held in solitary confinement in the same conditions and circumstances as Stephen Hugueley. Keeping the appellant silent, allowed the defendant's attorneys to successfully make pleadings to the mediator regarding four (4) inconsistent *T.D.O.C. Policies 503.03.*

The depositions of the defendants named in this case were not even placed in the record of the proceedings. This part of the settlement the appellant refused to agree to was taken out of

8

his hands. Hall was labeled incompetent to undermine his complaint, to dismiss the issues and cover up the official oppression, by making an agreement allowing them to claim: "No Admission of Liability." (D.E. 123-1 PageID # 1327, § I. 4.)

The Middle District Court of Tennessee, located at Jackson Tennessee had already deemed, ruled and adjudicated that the appellant Jon Hall was competent. This competency was based upon *Hall v. State, 2005 WL 22951 @ 3, 12, 14-18; Jon Hall v. Carpenter, 2015 WL 1464017 \*19 (W.D.E.D. TN. 2015); Hall v. Mays, 7 F.4th 433, 442 (6th Cir. 2019).* The claim that Hall was not competent is not supported by the evidence and not credible. The Guardian Ad Litem abused his power because he went ahead and signed the settlement agreement on Mr. Hall's behalf, over his advanced objection to the March 25, 2022 agreement, ratified by Attorney Brad Maclean and Lisa Helton, against Hall's will. (D.E. 123-1. PageID #1332.); From the start, Mr. Hall as a pro se litigant, began preparing grievances, filing administrative appeals and motions, citing facts and raising theories counsel used to amend his complaint. This raises a suspicious circumstance to view the motive behind governing the direction of only the mediation and settlement part of this case. The appointment of and wrongful       usurpation of Halls declaratory rights by a guardian violated Mr. Halls *14th Amendment due process rights.*

Joint participation by interested parties, deprived Mr. Hall of his dignity and equal treatment of inalienable rights, as a member of the human family, the foundation of freedom, justice and peace. See: *Universal Declaration of Human Rights (1948)*: which provides; *Article 6*; (Everyone has the right to recognition everywhere as a person before the law); *Article 12* (No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, nor to attacks upon his honor and reputation. Everyone has the right to the protection of the law against such interference or attacks.); *Article 18*: (Everyone has the right to freedom of thought,

conscience and religion; this right includes freedom to change his religion or belief. and freedom, either alone or in community with others and in public or private, to manifest his religion or belief in teaching, practice, worship and observance.) *Article 19;* Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers. Mr. Hall was denied his universal human rights to be present at a non compos mentis hearing, to usurp his will and freedom of choice; to punish him for trying to make defendant's apply laws that progress legally through separation of powers. *U.S. v. Taylor, 21 F.4th 94, 100-101 n. 3 & 6 (2021).* Former Unit 2 Manager, now Warden of Treatment, Michael Keys at his 12/07/20 deposition, said: "I feel John Hall is more paranoid and has some temperament issues that may that might need a little medication or something. But I don't think John Hall doesn't comprehend. I think he does seem to know what he sees, what he hears, and stuff like that." Page 166; and Key's said: "You say Freemasons; I've seen a lot of correctional staff back in the day that were Masons. Lord of the Rings came to work here, displayed their stuff. So a perception, military, a lot of ex-military people here. So I could see where he could come from gaining that understanding. (D.E. 141 Exhibit 4; Page 167; Keys deposition). *Federal Rules of Evidence 601.*

It was decided in *Hall v. Trump, Case No. 3:19-cv-0628*, that these two cases were related (Document No. 7, 9/03/19 Memorandum and Order; PageID 195-198.) After a prolong stay in solitary confinement, Stephen Hugueley committed suicide on July 16, 2021, *Hugueley v. Parker, No. 3:19-cv-00598*; Document No. 119, PageID # 2128, 07/13/21; Mr. Hugueley's final words to the Court, specifically grieved the following in part: "40 days had already passed in the mediation process and there had been absolutely no discussion concerning the list of what I

10

would settle for in lieu of an A-level." The foregoing letters reveals' S.R.V.H.'s position

regarding Hall's claims:

**S.R.V.H. LETTER July 27, 2021;** (Document 146, filed 03/16/23; PageID # 1678).

> *"This morning Judge Trauger issued an order appointed Brad Maclean guardian ad litem for you for the limited purpose of the upcoming mediation with T.D.O.C. in your case. Mr. Maclean is a long-time public defender an advocate for prisoners on death row. He currently serves as the vice president of the Tennessee Innocence Project, a program dedicated to exonerate innocent prisoners. He has served as a guardian for death row inmates in the past.*
>
> *The appointment of Mr. Maclean came out of a conference called by Judge Trauger last Tuesday, which focused on the harm the state has perpetuated on you and on your mental health. In that conference, we discussed Dr. Grassian's findings, as well as the fact that the State is currently trying to get you additional mental health treatment (as we have discussed). Given your medical condition and the complexities and difficulties of navigating T.D.O.C. policies and procedures, all of the parties (I.e. mediator Joe Brown, the States Attorney's, and us) agreed it may be helpful to you to have an expert guardian like Mr. Maclean to assist you in navigating the upcoming settlement conference and related issues.*
>
> *Mr. Maclean will arrange to visit you as soon as possible to hear from you, identify your concerns and desires, and find a way to work with you to get you improved conditions, mental health treatment, and other relief at issue in this case."*

**SRVH Letter January 26, 2023;** (Document 146, filed 03/16/23; PageID # 1678).

> *"We have received several voicemails from you recently and have seen your various filings with the court. We wanted to write to clarify that our role as your appointed counsel is completed."*
>
> *"As you are aware, we began to represent you after Judge Trauger issued an order appointing us as your counsel to pursue a <u>civil</u> lawsuit about your solitary confinement. The order did not authorize us to participate in the defense or handling of your criminal case in any way."*
>
> *"Your case proceeded in tandem with Mr. Hugueley's case in which he was represented by Paul Davidson. Both cases sought*

*injunctive relief about the uses of solitary confinement, both cases expressly did not deal with the underlying criminal conviction. Unfortunately, Mr. Hugueley died before his case was resolved, and it was dismissed as moot. Your case has been concluded by a settlement agreement, and the court has found that the defendant's are in compliance with the settlement agreement. Thus, there are no further actions that we are authorized to take on your behalf."*

*"Thank you for taking the time to read this, and I hope it clarifies that there is nothing further we can do at this time."*

## THE DIFFERENT LETTERS SHOW TWO DIFFERENT POSITIONS

The State said, "After an unsuccessful attempt at mediation, Harbison asked the Court to appoint a Guardian for Plaintiff pursuant to ***Fed.R.Civ.P., Rule 17(C)"***; citing: (D.E. 90). Mr. Hall was not present at any conference hearing. QUESTION where is the transcript, or Hall's waiver of right to be heard? A nul tiel record = void? An observant reading of the (2) contrasting letters as marked, exposes: (1) not only did Mr. Harbison mislead Hall (after the fact; no notice or defense) to believe the appointment of Guardian Bradley Maclean, came out of a conference called by Judge Trauger last Tuesday, was Judge Trauger's idea; and (2) Mr. Harbison reasoned that Mr. Maclean's capacity as a public defender in capital cases, could be helpful for Mr. Hall's desire in obtaining other relief, toward Hall's interrelated root claim of actual legal innocence, originating from the void Madison County judgment, being imposed by the court. The void judgment caused the illegal conditions of confinement in the first place, dispite their insistence on the approving un-promulgated ***T.D.O.C. Policy 503.03***, through the ***U.A.P.A.*** that affected his ability to defend himself against these defendants in State Court.

The second letter shows counsel's true plan: (1) that Mr. Harbison was not concerned with Mr. Maclean's ability as a public defender to assist Mr. Hall in his capital case, Mr. Harbison stated his role, had not authorized him to handle any issue related to the criminal case

as an appointed attorney; and (2) the letter shows his role changed from one seeking declaratory relief, before he had a Guardian appointed, to just seeking injunctive relief. The record shows: Bill Harbison's amended complaint claimed "to seek a declaration that the defendant's conduct violates *42 U.S.C.A. § 1983*," and "seek injunctive relief as fashioned by this Court to address Mr. Hall's psychological and medical needs," caused by prolong and indeterminate solitary confinement. (D.E. 41-1; 4th Complaint; filed 3/20/20; PageID # 458-459, § 10). S.R.V.H. Counsel did not stop defendant's from abusing *T.D.O.C. policy 503.03,* an un-promulgated policy that provided the defendants with more opportunities to continue to illegally discriminate and punish the death row prisoners under solitary confinement conditions, in violation of the Double Jeopardy principles. *Lindsey v. Washington, 301 U.S. 397, 401, 57 S.Ct. 797, 799 (1937)*; (Constitution forbids applying new punitive measures to a crime already consummated.) (D.E. 79 PageID # 829 – 833; Hall's double jeopardy argument). In short, the denial of Hall's right to be present kept Hall silent, and without a voice to address his expressed grievances regarding the prolong, unconstitutional conditions of confinement on Death Row. A condition made possible only by officials unlawful acts exercised under *T.D.O.C. policy 503.03*. There is a process offered by *P.L.R.A.* to oblige prisoners to participate, and direct the collective panel to express Hall's grievances for consideration. *42 U.S.C.A. § 1997 § (f); T.C.A. § 16-1-105.*

On January, 16, 2021, Mr. Hugueley provided testimony about his fathers suicide in 1980, and the "keep on person" blood pressure medication he had in his cell while in segregation on death row. (after documented hoarding incidences and suicide attempts). On July 13, 2021, Mr. Hugueley submitted his "Plaintiffs Statement To The Court," laced with suicidal ideology (*Hugueley v. Parker, 3:19-cv-00598*; D.E. # 119 PageID #2125 to 2172). This shows a lack of consideration for Mr. Hugueley's well being before he died. This should have been addressed

after reading Hugueley's statement made to the district court. This information should have been acted upon when they received this statement. The unelected officers of the court showed their indifference by approving *T.D.O.C. Policy 503.03* when they approved the policy itself in Hall's settlement / agreement. This covered up T.D.O.C.'s failure to promulgate Policy 503.03, through the **U.A.P.A.** This policy allows T.D.O.C. to place inmates like Mr. Hugueley into solitary confinement to cloud their rational and motivate them to commit suicide. Other developments have occurred involving another mentally ill inmate, Henry Hodge, who cut off his Penis. See **Appendix Exhibit 1**; Complaint; *Hodge v. Lisa Helton, No. 22-1440-III, Davidson County Tennessee Chancery Court, filed 10/28/22.* (D.E. 132; Notice of Imminent Danger.) Dr. Grassian's report about the psychiatric effects of solitary confinement. Supra page 6, 7.

**II.)**    **Was Sherrod, Roe, Voigt, and Harbison, (S.R.V.H.) unduly influenced by the governor's appointment of T.D.O.C. interim commissioner Lisa Helton?**

On March 25, 2022 Sherrod, Roe, Voigt & Harbison (S.R.V.H.) law Partner Bill Harbison, filed a "Joint Motion to Dismiss & Retain Jurisdiction. Saying: "the parties reached a settlement agreement listed as Exhibit A." Per its terms, the parties jointly moved the U.S. District Court to dismiss this case." (D.E. 123, PageID 1321-25). Brad Maclean, in his capacity as Hall's Guardian Ad Litem, S.R.V.H. Attorney, Lisa Helton, BOPR 023684, approved *T.D.O.C. Policy 503.03*, despite Hall's grievance. Lisa Helton then signed the agreement applying un-promulgated *T.D.O.C. Policy 503.03* via **U.A.P.A.** (D.E. 123-1, PageID #@ 1330 and 1340.) Brad Maclean's agreement effectively extinguished Hall's declaratory judgment interest against an illegal policy to remove Hall's argument over a second punishment for a criminal offense. (D.E. 79, PageID # 629-633.) Lisa Helton's self-dealt benefits for herself and the defendant's. (D.E. 146 PageID 1679. Gov. Lee Announces Salary Increase for Tennessee

Correctional Offices. "This salary increase makes our agency more competitive in attracting new talent and is a well-deserved raise for those currently serving our state.") (D.E. 30, § 13, PageID # 351; *ie.* Judge's comment about S.R.V.H.'s incentive package for everyone including prisoners). Lisa Helton, BOPR # 023684, works for both the S.R.V.H. law firm, under Bill Harbison, and should not have been aligned with Tennessee Board of Probation and Paroles, in violation of *Tennessee Supreme Court Rule 8, ABA Rule 1.7*. Lisa Helton has a Master's Degree from Vanderbilt school of law, and was appointed interim Commissioner for Tennessee Department of Corrections, during the pendency of Mr. Hall's lawsuit. This concurrent representation of conflicting interest, shows that Mr. Hall's claims over the abuse of Executive Powers, by the State Government carries significant weight. The service of truth and justice in this matter cannot help but cause reputational injury by the alignment of Bill Harbison, prosecuting this case, and Lisa Helton, representing defendants. *U.S. v. Dyess, 291 F.Supp.2d 493, 497 (2002);* "The service of truth and justice to the defendants, and the appearance of impropriety motivates decision." S.R.V.H. law firm was unduly influenced by conflicting interest, i.e. double self-dealing agents in state contracts, selling out Mr. Hall's declaratory judgment interests, outside the scope of legislation, to allow the State to apply a void classification "rule," and impose illegal punishment(s). *Chrysler Corp., 99 S.Ct. 1705, 1721 (1979)*; *T.C.A. § 40-34-103(c)*; No first-degree murder is eligible for contract sentencing. *T.C.A. § 40-34-105 (b)*. S.R.V.H. and Lisa Helton's joint representation [working both sides of the lawsuit], shines the light on Vanderbilt's adjunct professor, Mr. Brad Maclean's self-dealing dual role; creating future personal and financially interested terms built into Halls settlement agreement, and a life time job Guardianship, by making Hall a ward of the State. *For Seniors Help v. Westchester Fire Insurance Co., 515 F.Supp.3d 787, 801 (M.D. Tn. 2021.*)

**III.) Was it proper for Mr. Hall's counsel to make an agreement that allowed the T.D.O.C. to deny all claims with no admission of liability?**

What must be taken into consideration is simply that there is more than one Current **T.D.O.C. Policy 503.03**. In fact there are a total of 4 Policies listed as 503.03. They all deal with the same information. The degree of difference between the policies changes consist of altering the amount of time an inmate is allowed out of their cell and / or the duration of the time required to be placed in administrative solitary confinement, and highlights a suspicious circumstance.

The changes made in each policy shows that T.D.O.C.'s position keeps changing to different policy 503.03's, were placed in the record for the courts adjudication. (1) Attached to the settlement agreement there are two policies 503.03's. The *first* policy is dated **March 15, 2018**, approved by Commissioner Tony Parker. (D.E. 123-1, PageID 1333 to 1339.) The *second* policy is dated **February 1, 2022**, approved and signed by Interim Commissioner Lisa Helton. (D.E. 123-1, PageID 1340 to 1349.) (2) The *third* policy 503.03 was signed and approved by Tony Parker, dated **March 15, 2018** and contains different time matrixes regarding out of cell time for Death Row inmates who are Levels B's and C's. It was entered into Mr. Hugueley's case in *__Hugueley v. Parker et.al., 3:19-cv-00598__* and listed at (D.E. 60, PageID 750 to 757). (3) The *fourth* policy 503.03 is in actuality the Riverbend version or Wardens Policy listed as 503.03-1 created and signed by warden Tony Mayes. This policy entered at (D.E. 126, PageID 1413 § 32. It is dated **March 1, 2019**. This policy overrides the Commissioners policy and changes the time matrix for recreation from two (2) hours listed in the commissioner's policy to one (1) hour. It changes the time matrix concerning the release eligibility dates in order to be released from solitary confinement. In this light, the "Joint Motion to Dismiss and Retain Jurisdiction," is not based upon the merits of Hall's claims, nor is it based on the adoption of the

several *T.D.O.C. Policy's 503.03*. It violates the separation of powers when quasi policy makers make rules without first being promulgated through the *U.A.P.A.,* and approved by unelected and untrained officials. (D.E. 123-1, PageID 1326). *Greason, 891 F.2d. @ 838 n. 20.*

Moreover, the disproportionate money settlement is a suspicious circumstance, and a factor to consider, whether the "attorney fraudulently pretended to represent a party and connives at his defeat, or sells out his client's interest; *Nobes v. Earhart, 769 S.W.2d @ 874 (Tn.App. 1988)*; *Seniors Help v. Westchester Fire Insurance Co., 515 F.Supp.3d 787, 801 (M.D. Tn. 2021.*) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 2 of the Revised Statutes of the United States *(42 U.S.C.A. § 1988)* such fees shall not be awarded except to the extent that; (A) the fee was directly and reasonable incurred in providing an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 2 of the Revised Statutes; (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. It is made quite clear from the settlement conditions; (D.E. 123-1, PageID # 1328 § II. § 12),  that Brad MacClean, S.R.V.H. attorneys and Lisa Helton made, a lucrative settlement for two hundred, twenty five thousand ($225,000) dollars for attorney fees and was justly earned when Mr. Hall, the prisoner, who's constitutional rights were violated only received a settlement of three thousand ($3,000) dollars, as approved by the court. It doesn't take a mathematician to see that the twenty-five (25%) percent allowed by the *P.L.R.A.* has been grossly abused.

This is a conditions of confinement case, and both Mr. Hall and Mr. Hugueley, personally tried to advance a liability case, but the standard is not whether there is something easy that the policy-makers, with the benefit of hindsight, could have done. It is whether they knew that their nonperformance duty in evaluating the circumstances of this situation, when reviewing an unauthorized *T.D.O.C. Policy 503.03*, and utter disregard of an excessive risk imposed on other death row prisoner's health and safety. Mr. Hall was specifically grieving; *Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1983 (1994); Burns v. Robertson County, 192 F.Supp.3d 909, 921 HN # 10 (M.D. Tenn. 2016.)* The mental illness objective and subjective components show a deliberate indifference. ("Hodge has never made a level in 22 years I have been on death row. He suffered the most adverse unnecessary and wanton neglect, deprival's and mistreatment I have seen on death row. It is a miracle he has not committed suicide.") (D.E. 1, PageID # 25, § 71; Re: Henry Hodge); This is what happens after many years when an individual suffers from the extreme isolation of solitary confinement. (D.E. 132). There is no "objective evidence – based individual assessment of the initial need and regular review by use of a multidisciplinary team." (D.E. 146 PageID # 1695.); *Friedman, 573 F.Supp. 3d 1221, 1230-31 n. 7 (M.D. Tn. 2021); Hardy, 618 F.Supp.3d 671, 692-93 Hn. 10 (M.D. Tn. 2022).*

**IV.)    T.D.O.C. Policy 503.03 was improperly adopted by the Department of Corrections and illegitimately approved by the quasi "Policy Makers?"**

The question offered for review was presented 07/24/19: (D.E. 1-9; PageID # 97-102). That is; was *T.D.O.C. policy 503.03* rules improperly adopted and void ab initio? The appellant says; "Yes *T.D.O.C. Policy 503.03* (Death Row level program) was improperly adopted, and *should* have been promulgated through the *U.A.P.A.*, under *T.C.A. §§ 41-1-108; and  41-21-818*. And "yes," *T.D.O.C. Policy 503.03* is void ab initio, because it was not viewed by the

checks and balances of the *U.A.P.A.*, making the "rules" void under *T.C.A. § 4-5-216*;
Furthermore, the rules could not be used to create a death row contract sentencing agreement.
*T.C.A. § 40-34-103 (c); T.C.A. § 40-34-105*. This is outside the scope of Tennessee's legislative
authority. *Chrysler Corp. v. Brown, 441 U.S. 281, 308, 99 S.Ct. 1705, 1721 (1979);* (D.E. #144.)

## CLASSIFICATION

The function of classification process is to determine each inmate's security level, the
institution to which he will be assigned, and the employment, educational or vocational program
in which he should participate. It is undisputed that a competent classification system is very
important to the operation of prison system, and should identify medical, psychological,
vocational and educational needs of inmates, as well as insuring the separation of violence prone
inmates from the potential victims and enabling closer supervision of higher escape risk inmates.
*Grubbs, 552 F.Supp. 1052, 1060 (M.D. Tn. 1982)*. Tennessee statutes governing classification
are mandatory. *The Tennessee statute states*: "The prisoners shall be graded and classified in
such manner as shall be most conducive to prison discipline and the moral status of the prisoner."
*T.C.A § 41-21-202*.

Individuals assigned to Death Row, are housed based entirely on their sentences and,
rather than undergoing normal classification procedure, they are automatically assigned the most
restrictive classification, "mandatory segregation." That classification is changed to a less
restrictive classification when the sentence of death is lifted. Although some death sentenced
inmates have been classified, that classification has had no impact on their treatment while on
death row. *Groseclose v. Dutton, 609 F.Supp. 1432, 1436 (Tenn. 1985)*. **NOTE**: The mandatory
segregation is not based on statutory law; it is based solely on "rules," under *T.D.O.C. Policy
503.03*. *T.D.O.C. policy 503.03* governs regulations regarding Tennessee's death row, and lets a

prisoner's classification to be overridden under *T.D.O.C. Policy 401.08, VI. F. 1*, giving T.D.O.C. staff unbridled discretion to stigmatize and selectively punish the mentally ill, with prolong restrictive housing, a policy that does not apply to rest of the entire prison population. *Occupy Nashville v. Haslam, 949 F.Supp.2d 777, 794-95, & 803 (Tn. 2013).* The level system program was originally adopted for death row as a remedy for solitary confinement, however, T.D.O.C. turned it into an Ex Post Facto form of another type of solitary confinement to punish death row prisoners, under *T.D.O.C. policy 503.03.* (Counselor Warren Tate's 02/12/21 deposition at page 60) (Purpose of a C-level is to punish for disciplinary offenses) (D.E. 134, PageID # 1510 § 29; Warren Tate's undisputed admission). *Reid v. Lee, 597 F.Supp.3d 1177, 1180-81 (M.D. Tn. 2022).* The Ex-Post Facto civil regulatory scheme is supposed to be non-punitive. *Groseclose, 609 F.Supp. 1432, 1448 (Tn. 1985);* (Death row plan, signed by Attorney General 9/30/85, in accord to *T.C.A. § 4-5-211).* This remedial plan rescinded by the Court. *Groseclose II, 788 F2d. 351, 361 (6ᵗʰ Cir. 1986); Grubbs, 821 F.Supp. 496, 504-05 (Tn. 1993).*

Judge Trauger granted pro se death row inmate, Henry Jones, authority to litigate changes to policy without expert help. *Henry Jones v. Mays, No: 3:21-cv-00666; 2022 WL 3651964, @ *10. (August 24, 2023.)* Hall's case reveals that S.R.V.H. squandered judicial resources and wasted a perfect opportunity to make legitimate changes to policy 503.03, as per findings of Corrections Expert Martin Horn. (D.E. 146 PageID# 1697-98; Objective Factors).

(a) *T.D.O.C. policy 503.03* (level program) overrides prisoner's statutory right to: *T.C.A. § 41-21-402* (classification), using *T.D.O.C. Policy 401.08 VI. (F)(1);* (D.E. 1-9; PageID 100, 101); Giving *T.D.O.C. policy 503.03,* unbridled discretion to determine prisoner's custody status, overriding an inmates "objective foundation" for determining custody levels. This policy is not an effective substitution to protect prisoners right, to be free from enhanced punishment more

than (30) days, *T.C.A. § 41-21-402*; a legislative right to be graded and classified involves more than internal management of a prison. Inmate's classification affects how prolong his stay in administrative / punitive solitary confinement." Ultimately affecting quality of both the prisoner's or loved ones liberty to pursue happiness, **e.g.** religious volunteers, family, friends and lawyer's visitation rights, as guaranteed by preamble; and right to petition Government to redress legality of classification procedures affecting the public through the *U.A.P.A. Kelly v. Brewer, 378 F.Supp. @ 451 n.12 (1974)* (D.E. 9-1, PageID 231-232; 245-250); (b) Classification procedures serve a distinctly different purpose than disciplinary matters. See: "Classification," on supra page 19, as stated in *Grubbs, 552 F.Supp. 1052, 1060-61 (MD Tn. 1982)*; (classification procedures only takes six weeks; not a year as in policy 503.03). Thus, classification cannot be overridden by adoption of rules, because this procedure is not specifically exempt from the *U.A.P.A.* rulemaking promulgation under *T.C.A. § 4-5-106(b). Mandela v. Campbell, 978 SW2d 531, 532, n. 2 (Tn. 1998)*; (applying *U.A.P.A.'s* "rule" definition, specifically excluding "[s]tatements concerning only internal management of state government, and not affecting private rights, privileges or procedures available to public. *T.C.A. § 4-5-102(10)(A)*. (c) The question for review in *Mandela*, is "whether T.D.O.C.'s Uniform Disciplinary Procedure constitutes "rules" under the ("*U.A.P.A."*) Is off-point of the question here, addressing classification matters, for several reasons. First, the purpose for classification matters is distinctly different from punishment, as shown in *Grubbs*; and (affects inmates and visitor's *fundamental rights,* and not just *internal management.* Prisoner's are members of the public for census matters.) *Massey v. Secretary, Dep't of Public Safety and Correctional Services, 389 Md. 496, 523-24, 886 A.2d 585, 601-02 (Md. 2005)* (Prison "rules" directly affect sentence and not just internal management. Tennessee case *Mandela*, is not persuasive); and *Hampton v. Dep't. of*

*Corrections*, 336 N.J. 520, 527-530, 765 A.2d 286, 289-90 (N.J. A.D. 2001) (Classification must be promulgated pursuant to *U.A.P.A.); Martin v. v. Dep't of Corrections*, 424 Mich. 553, 562-65, 384 N.W.2d 392 (1986). Second, the statutory process for classification matters (*T.C.A. § 41-21-202*), is overridden by the employment of *T.D.O.C. Policy 401.08 VI. (F)* and (D.E. 126, 43); "it affects the *fundamental rights and privileges* of the public. Finally, classification is more than just *internal management of Government*." (D.E. 126, PageID # 1415-1417, § 41-49.)

The Tennessee Department of Corrections, Commissioner, is an administrative agent illegally adopting policy in the exercise of its commingled legislative, executive, and judicial functions. Rulemaking is part of his legislative functions that has been delegated to the his authority under the pretext of necessity of making policy under *T.C.A. § 4-3-606; T.C.A. § 41-1-108*; and *T.C.A. § 41-21-818*. "The Constitution of Tennessee provides clear boundaries of (3) three branches of government and directs each branch not to usurp the prerogatives of the others." *Tn. Cable TV v Tn. Public Serv. Comm'n.* 844 SW2d @ 168  (Tn. 1992).

Although it is true, the T.D.O.C. has the authority to make policy *T.C.A. § 4-3-603* and *T.C.A. § 4-3-606*; and court's often yield to prison administrators on the subject of "policies and practices" needed "to maintain institutional security. *J.H.*, 951 F.3d at 718 (quoting *Bell 441 U.S. at 547*). But "this deference has its limits." *Id.*, see: *Gotti*, 755 F.Supp. at 1164 (citation and quotation omitted); *Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989) ("[P]rison authorities officials do not set constitutional standards by fiat."). The citizens of Tennessee elect the legislature and as an elected body, it speaks for the people on matters of public policy. *UNELECTED* officers of a department **cannot adopt rules** to circumvent STATUTES by the legislature." *Dep't of Mental Health v Allison*, 833 S.W.2d 82, 85 (1982).

Its undisputed material fact that ***T.D.O.C. policy 503.03***, was not promulgated through the ***U.A.P.A.*** and VOID. ***T.C.A. § 4-5-216***. COMPARE: Tony Parker's 10/27/20 Deposition, page 34: Question: "Is there anyone above you who then has to further approve the policy " Answer: "I'm the last link in the chain, yes." "Particular rules may not be effective until rule has been filed with the attorney general and reporter." (D.E. 126, PageID #1416 § 44.); ***T.C.A. § 4-5-211***, citing ***<u>Cosby, 2005 WL 2217072, at \* 2, n. 5 (Tn.App. 9/15/05)</u>***. CITED: ***<u>Occupy Nashville v. Bill Haslam, 949 F.Supp.2d 777, 794 (M.D. Tenn. 2013)</u>***. (Authority to make rules - Selective prosecution ***<u>id.</u> @ 803***). Classification rules affect Mr. Hall's fundamental rights and privileges to visit with the public. Both prisoner's and visitor's are members of the public. Defendant Tony Parker admitted he was the last link in the chain, for promulgation of T.D.O.C. classification rules. Thus failing to get "rules" promulgated through ***U.A.P.A.***, without regard to the written laws. Unit 2 Counselor Warren Tate admitted ***T.D.O.C. Policy 503.03***, was applied as punishment, in violation of ***T.C.A. § 41-21-402***. See: (D.E. 134 , PageID 1510, § 27-30.)

Courts have jurisdiction to review procedural issues no matter whether the Commissioner is engaged in rulemaking, enforcement, or adjudication. He must comply with all statutes and constitutional provisions governing procedures. A court may review any rule to decide whether the Commissioner has authority to promulgate, enforce, or adjudicate it, and whether he complied with all relevant statutory requirements in doing so. ***<u>Tn. Cable TV v. Tn. Public Serv. Comm'n, 844 SW2d 151, 163-65 (Tn.App. 1992)</u>*** (Court may vacate agency's decision when agency procedures violates statutory provisions or is unlawful. ***T.C.A. § 4-5-322 (h)(1, 3, & 4))***. Here the problem is, the lower court failed to analyze this point.

### V. Is Mr. Hall likely to succeed on the merits of his case?

The "Joint Motion to Dismiss and Retain Jurisdiction," (D.E. 123, PageID # 1321-1325), is not based upon the merits of the plaintiff's claims, nor based on a reasonable inquiry and understanding of the true nature of the contents of the agreement. (D.E. 123-1, PageID # 1326-1332); and (D.E. 123-1, PageID # 1340-1349). Hall submits that *U.A.P.A.* cannot adopt unbridled discretion without objective factors, it discriminates. Stephen Hugueley won summary judgment, Hall should be entitled to associational standing ***Children Health Defense v. Food and Drug Administration***, *573 F.Supp. 3d. 1224, 1241 (E.D. Tn. 2020)*; (Standing (1) its members would have standing to sue in their own right. (2) The interests that the suit seeks to protect are germane to the organizations own purpose, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.) In short, Mr. Hall was similarly situated to Mr. Hugueley in his own right for summary judgment purposes.

In an analogous case of unconstitutional punishment, defendant's claimed the plaintiff's conditions of confinement, were not punitive.[1]

> "Courts need not rubber stamp prison policies if the record indicates they are excessive relative to theoretical security concerns. *Bell, 441 U.S. at 562; Flagner, 241 F.3d at 483; Whitney, 882 F.2d 1078; Bout, 860 F.Supp.2d at 311* ("Although I recognize that courts loathe to interfere with questions of prison administration... I cannot shirk my duty under the Constitution... to ensure that Bout's confinement is not arbitrarily harsh."). That is exactly what the record indicates here.*; See also Fn. 1.*
> ***Friedman v. Parker***, *573 F.Supp. 3d 1221, 1230-31 n. 7 (M.D. Tn. 2021).*

The gist of Mr. Hall's case represents the same failure in ***Friedman*** to classify an inmate in accordance to the mandatory classification statutes, leads to selective prosecution and discrimination by the inept miscalculation of ***"objective factors,"*** necessary to determine the

---

[1] The defendant's contradicted the position "offered in their brief regarding the security concerns presented by Mr. Friedman. Defendant Williams wrote to Mr. Friedman that if she had to classify you, you would be a "2" on the "CAF" which corresponds with a "Minimum Security Classification." *Id. @ 2.*

same cause to hold prisoner in solitary confinement; *Occupy Nashville v Haslim, 949 F.Supp. 2d. @ 803 (M.D. Tenn. 2013).* Compare for example the prolonged duration of time a *death row prisoner* was required to serve in administrative solitary confinement, verses the time that is served is served by female prisoners in *open population.* In short, when normal population get punished, their time in involuntary segregation is significantly less than inmates on death row who are governed under *T.D.O.C. policy 503.03; Hardy v. Fisher, 618 F.Supp.3d. 671, 692,-94, Head note 10 & 11 (M.D. Tenn. 2022).* Death row rules selectively enhances the mentally ill inmates duration of punishment administered under solitary confinement conditions, causing the Physical and Mental harm to the death row prisoners. Solitary Confinement manifested public interest after the realization of the harm caused by the psychiatric effects caused by the Covid 19 pandemic. *Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1983 (1994).*

Mr. Hall had a protected liberty interest in being released from administrative solitary confinement, once his security classification points were below the required security classification point system objective factors as shown in *Friedman. Sandin v Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995).* (When prison officials subject prisoners to atypical and significant hardship... in relation to ordinary incidents of prison life, they must observe due process safeguards.); *Mackey v. Dyke, 111 F.3d. 460, 462 (6th Cir. 1997).* (No longer qualified for segregation, based upon the *objective factors* related to security classification. As demonstrated by the determination in the ruling made in the *Alexander Friedmann* case.) Everyone realized Hall would not agree to discriminatory sham reviews by *T.D.O.C. policy 503.03*, as a substitute "rule" for statutory classification. (D.E. 1-9, PageID 100: Offered on 07/24/19).[2] The parties focused on Hall's beliefs instead of the substance of his complaint that

---

[2] The record in Mr. Hall's case shows he scored a level of 5, on T.D.O.C. / ("CAF") offender

25

proved that he should not have been in solitary confinement, a double punishment for the amount of time he was locked up. (D.E. 146 PageID #1697-98; Martin Horns Expert Report Conclusion).

**VI. Was Hall unduly injured by Lisa Helton's selection as interim Commissioner?**

The Governor Bill Lee (Hall's pro se named defendant; D.E. 1, PageID # 7, § 10) interfered in Mr. Hall's business relations with S.R.V.H., with an advantage, by appointing S.R.V.H.'s attorney, Lisa Helton, as T.D.O.C.'s Commissioner, to contract for him in this case. S.R.V.H. law firm partner and attorney, Mr. Bill Harbison (the "H" in S.R.V.H.), Mr. Hall's appointed counsel, was influenced by a lucrative contract, signed by his employee Lisa Helton, or her relative named Lisa Helton that benefited themselves as Hall's attorney in the sum of $ 225,000.00 for settling this case, over Hall's objection, for $ 3000.00, in violation of the *P.L.R.A.* act without having to go to trial. Lisa Helton, as acting Commissioner, was self-dealing herself a raise as both a Tennessee Board of Probation and Paroles agent, and as interim Commissioner, and fashioned a beneficial contract for T.D.O.C. Defendant's, in the form of a salary increase statewide. (D.E. 146 filed 03/16/2023; PageID # 1679.) *Gardner v. Parsons, 874 F.2d. 131, 140 (1989).* (Abuse of Authority – Dual representation caused personal and third party liabilities.)

It is an undisputed fact, that Lisa Helton works for S.R.V.H. and the Governor, and all the parties approved contracts that benefitted themselves. S.R.V.H. had exclusive control over both sides of the case. (D.E. 126; PageID # 1414 § 39.) (D.E. 134, PageID # 1506 § 8). The S.R.V.H. law firm had a fiduciary duty with Mr. Hall to deal with his personal rights and property in the

---

Summary, and corresponds with a 'minimum' security classification," and continues at Level C, due to 'OVERRIDE.' (D.E. 1-9 PageID # 100-101; "CAF" score 5; override C-level). See also: *Hugueley v. Parker, 3:19-cv-00598 2020 WL 4753845 * 1, *3, (MD Tn. 08/17/20)* ("the most restrictive form of incarceration on death row;" *Hugueley* file [Doc. 60 @ 33, 34 ¶¶ 40-41; Doc. # 21-8]); (D.E. 1, Page ID # 21, § 57; Hall's sworn complaint, began C level starting October 22, 2013.)

good faith. The superior bargaining power of the Governor, on behalf of the defendant's, was created by concurrent conflicts of interest. S.R.V.H. agents formed an unconscionable agreement to make policy for the Governor that dodged the checks and balances of *U.A.P.A.* Act. The disproportionate money settlement is a suspicious circumstance, and a factor to consider, whether the "attorney fraudulently pretended to represent a party and connives at his defeat, or sells out his client's interest." ***Nobes v. Earhart****, 769 SW2d 868, 872 (Tn.App. 1988)*. Here, the agreement was not a voluntary agreement under the terms at play in this situation, where everyone is a lawmaker, without having to be elected. The presumption of undue influence, arose from Lisa Helton's settling Hall's claim out-of-court, for S.R.V.H. boss Mr. Harbison, and her T.D.O.C. boss, Governor Bill Lee. Lisa Helton also awarded Hall's court appointed Guardian, Brad Maclean, a lifetime contract for his services, to assist Hall a competent prisoner, for his own conflicting financial self-interest, by usurping Hall's free will that deprived him of the opportunity to make his own agreement, or go to trial. ***Ellis v. Duggan****, 644 S.W.3d 85, 114-15 (Tn.App. 2021);* (The dominant rule in confidential relationships, followed by transaction wherein the dominant party receives a benefit from the other party). Here, S.R.V.H. approved *T.D.O.C. policy 503.03*, as part of the terms of the settlement agreement, over Hall's objection. This policy governs the regulations regarding Tennessee's death row, giving T.D.O.C. staff unbridled discretion to stigmatize and selectively punish mentally ill prisoners with prolong restrictive housing. Damage was caused to Mr. Hall's best interest claim, when they dismissed his declatory rights claim.

The danger incurred by a departments legislative overreaching, is that the "rule" may grant, or preclude a person from enjoying the exercise of certain rights and privileges. ***Occupy***

*Nashville v. Haslam,* *949 F.Supp.2d 777, 794-95, & 803 (Tn. 2013).* Death row "rules" enhance the punishment applied to a narrow group to selectively increase the quantum of punishment.

An unreliable, arbitrary, and capricious procedure that targets only death row inmates, and generates sham reviews, based upon nothing more than mental health profiling speculation, and personal bias, rather than expressed uniform standards of conduct violates due process. *McClary v. Kelly,* *87 F.Supp.2d 205, 214 (2000).* The target of the death row "rules" were originally designed as a remedial plan, but T.D.O.C. turned it into a criminal penalty for death row prisoners. The Court subsequently rescinded this remedial plan. *Groseclose II 788 F2d 356; Grubbs v. Bradley,* *821 F.Supp. 496, 504-05 (Tn. 1993).* This so-called reclassification, or override, is specifically forbidden under the Ex Post Facto clause, and precludes the application of punishment for a crime already consummated. *Lindsey v. Washington,* *301 U.S. 397, 397, 401, 57 S.Ct. 797, 799 (1937)*

### Conclusion

T.D.O.C. Policy and Procedure 503.03 allows death row inmates security levels [CAF scores] to be an automatic "Override" to maximum security because of their sentence alone. In Death Row terms, A-Level, B-Level, or C-Level ratings are arbitrarily determined by the administration. Allowing this practice to continue gives rise to excessive solitary confinement restrictions placed on inmates guilty of petty status disciplinary offenses. The officials unbridled discretion under unjustifiable standards affects death row inmates who have not been convicted a disciplinary infraction, only because they are new arrivals on death row, awaiting classification.

Mr. Hall is imprisoned under unconstitutional, jurisdictional violations concerning a void Judgment from Madison County, Tennessee in case number 96-589. Venue was changed by the trial court and approved by the State, over the objections of Mr. Hall, for the sole benefit to

shorten their commute to court from their respective homes and offices. The record is facially void without change of venue affidavits required by Tennessee Statutory Laws and Rules of Court. Mr. Hall committed no crime in Madison County, Tennessee. There are two (2) distinctive and inconsistent opinions regarding *Tenn.Crim.P. Rule 18; Tenn.Crim.P. Rule 21;* and *Tennessee Constitution Article 1, § 9* under unpublished rules of the Supreme Court, as *misapplied by T.C.A. § 16-3-405; State v. Nichols, 877 S.W.2d. 722, 728 (1994)*. Two inconsistent opinions regarding venue cannot both be true; *Cone v. Bell, 492 F.3d. @ 766, 129 S.Ct. @ 1779 (2009)*. The State has continually failed to produce venue affidavits because no affidavits were sought in this case. This shows proof beyond a reasonable doubt that Hall's trial record is void due to lack of Subject Matter Jurisdiction. The Government cannot demonstrate that it has three (3) valid, venue change affidavits, showing "cause" to give Henderson County Circuit Court the authority to change venue of the trial proceedings to Madison County. (D.E. 141 pages 8-17 § 25-63; outcome test.) Now that this Honorable Court has been made aware of how Mr. Hall was placed in the Tennessee Department of Corrections, Mr. Hall would submit that he has suffered a "Double Punishment Standard," due to the T.D.O.C. policies and procedures dictating his confinement, specifically un-promulgated policy *503.03,* that Bradley MacLean and Lisa Helton rubber-stamped as a settlement agreement. This agreement has become a sentencing agreement by the collective bargaining agreement made between Mr. Halls guardian and the State of Tennessee. Thus the agreement violates of *T.C.A. § 40-34-103(c)* *"...No offender who has been convicted as an habitual offender or has been convicted of a crime against the person, no offender who has been convicted of first-degree murder, and no offender who has been convicted of a sexual offense as contained in T.C.A. § 39-13-501; T.C.A.§ 39-13-506; T.C.A. § 39-13-507; T.C.A. § 39-13-101 and T.C.A. § 39-12-101 shall be eligible to*

*participate in the contract sentencing program authorized by this subsection (c);"* **T.C.A. § 40-34-105; *In re Medley, 134 U.S. 160, 174 (1890).* (**Misapplication of Ex Post Facto Laws.)

**T.D.O.C. policy 503.03** death row "rules" *alters and amends* the measure of punishment prescribed by the T.D.O.C. uniform disciplinary procedures policy by overlooking the "objective foundation," applied as the method to identify the security related concerns that govern the rest of the prison population. The "CAF" [classification] score is determined in a yearly review for inmates without disciplinary infractions. It is the findings and recommendations of the Disciplinary Board, chairperson, the disciplinary offense committed, and the "CAF" ratings for minimum, medium, or maximum security, that adjusts the "CAF" scores for population inmates. (D.E. 1, PageID # 34 § 95 (07-24-19.) In *__Harmelin v. Michigan__, 501 U.S. 957, 973-976, (1991),* it was determined that the Eighth 8th Amendment claim against cruel and unusual punishment was meant to forbid "unauthorized punishment(s)."

It's undisputed the "Settlement agreement" made without Mr. Hall's signature is void.

**WHEREFORE,** Hall is entitled to judgment as a matter of law. As a human being, he should be treated fairly and his freedom restored. If the court believes that Hall is incompetent and does not understand, then conduct an outcome test (D.E. 141 Pages 8-17, § 25, 34, and 42), under published laws: (1) *T.C.A. § 29-21-104; T.C.A. § 16-3-405*; and (2) *T.C.A. § 4-5-211* (Attorney General Signature) on *T.D.O.C. Policy 503.03*. Mr. Hall's freedom is the correct remedy. Mr. Hall wants this case sent back to the lower court to obtain the relief he requested.

Respectfully Submitted,

*[signature]* 7-12-23

Jon Hall #2389941
R.M.S.I. Unit 2 A-204
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209-1048

30

COPY

## IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE

HENRY HODGES,                          )
                                       )
    Plaintiff,                        )   No. 22-1440-III
                                       )   Death Penalty Case
                                       )
v.                                     )
                                       )
                                       )
LISA HELTON, in her official capacity  )
as Tennessee's Interim Commissioner    )
of Correction,                         )
                                       )
Dr. KENNETH WILLIAMS, in his           )
official capacity as Asst. Commissioner )
of Clinical Services, Chief Medical Officer )
Tennessee Department of Correction,    )
                                       )
    Defendants.                       )

## COMPLAINT

### I.   Introduction

Henry Hodges is a human being. He is an adult survivor of a childhood abduction and rape. He is a person who lives with mental illness which results in episodes of severe psychosis. Defendants know this. Despite this knowledge, Defendants and their agents have engaged in a course of conduct which exacerbated his mental illness ultimately resulting Mr. Hodges severing his penis from his body with a razor blade.

Currently, Defendants have Mr. Hodges strapped to a concrete slab, naked. As a result of Defendants intentional actions, Mr. Hodges is suffering severe pain, numbness, nerve damage, and extreme psychological distress. Defendants' actions

APPENDIX EXHIBIT 1

constitute torture.

Mr. Hodges files this complaint seeking declaratory and equitable relief. Defendants' actions are deliberately indifferent to Mr. Hodges right to medical and mental health treatment. Defendants' actions, and those of their agents acting under their direction, violate Mr. Hodges rights under the Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32; Article VI, § 2 of the United States Constitution: the Eighth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983, and state and federal law as set forth below.[1]

II.   Venue and Jurisdiction

1.   Venue is proper in this Court because Plaintiff is incarcerated at Riverbend Maximum Security Institution (RMSI), in this county; each of Defendants actions which constitute the deprivation of Plaintiff's rights under the United States and Tennessee Constitutions and the Tennessee Code have taken place in this county. Accordingly, the events giving rise to this Complaint have occurred and will occur in this county.

2.   This action arises under Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32 and Article VI, § 2 of the United States Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and state and federal law as set forth below.

3.   This Court has jurisdiction pursuant to Tennessee Code Annotated §§ 29-14-103, 29-14-113.

---

[1] This motion is filed under extreme time constraints owing to the exigent nature of Mr. Hodges current treatment. Plaintiff's counsel apologizes to the Court for any technical and typographical errors.

### III.   Statement of Incorporation

4.   All allegations in this Complaint are incorporated in all sections as if fully set forth therein.

### IV.   Parties

5.   Plaintiff Henry Hodges is a United States citizen and a resident of the State of Tennessee. Mr. Hodges is sentenced to death in the state of Tennessee and housed at RMSI in Nashville, Davidson County, Tennessee. Mr. Hodges is in the custody of the Tennessee Department of Correction (TDOC). He is housed at Riverbend Maximum Security Institution (RMSI), Unit 2. Mr. Hodges is currently housed in the infirmary at RMSI.

6.   Defendant Lisa Helton is the Interim Commissioner of the Tennessee Department of Correction, a state agency located in Nashville, Tennessee. In her capacity as Interim Commissioner, Ms. Helton is responsible for the safe and humane treatment of all prisoners in the custody of TDOC. Plaintiff sues Commissioner Helton in her official capacity. Commissioner Helton is a state actor, acting under color of state law. Her actions, and those of her agents, have violated and continue to violate, Mr. Hodges' constitutional and statutory rights as described below.

7.   Defendant Dr. Kenneth Williams is the Assistant Commissioner of Clinical Services and Chief Medical Officer, Tennessee Department of Correction, a state agency located in Nashville, Tennessee. Plaintiff sues Dr. Williams in his official capacity, as he is a state actor, acting under color of state law. Dr. Williams actions,

3

and those of his agents, have violated and continue to violate, Mr. Hodges'

constitutional and statutory rights as described below:

V.     Facts

8.     Henry Hodges suffers from Bipolar Disorder, Mixed Type, Severe, with

Psychotic Features. Ex. 1, Declarations of Dr. George Woods (Collective).

9.     As a child, Mr. Hodges was abducted by a stranger and raped.

10.     Mr. Hodges periodically suffers from psychotic episodes.

11.     When Mr. Hodges' illness is acute, he smears feces in his cell.

12.     On or about October 3, 2022, Mr. Hodges began to smear feces in his cell.

13.     In violation of the prevailing standard of care, Defendants or their agents, did

not provide Mr. Hodges with mental health treatment in response to his

manifestation of acute psychiatric disturbance.

14.     On or about October 5, 2022, an agent or agents of Defendant Helton began

to withhold food from Mr. Hodges.

15.     On or about October 7, 2022, Mr. Hodges psychiatric disturbance increased.

He broke the glass window in the cell where he was housed and cut his left wrist

with a razor blade. Mr. Hodges injury required stitches.

16.     While receiving treatment for his apparent suicide attempt at the RMSI

infirmary, Mr. Hodges informed the treatment provider that he needed to go to

suicide watch.

17.     Major Hereoux, an employee of TDOC assigned to RMSI, told the treatment

provider that Mr. Hodges was manipulating her.

4

18.    Major Hereoux told the treatment provider that he would place Mr. Hodges on suicide watch in the unit.

19.    Mr. Hodges was returned to the unit and placed back in the same cell with the broken window.

20.    Within an hour of being returned to the unit, Mr. Hodge completely severed his penis from his body with a razor blade.

21.    Mr. Hodges was transported by ambulance to Vanderbilt Hospital for treatment.

22.    Attorney Kelly Gleason with the Post-conviction Defender's Office was at RMSI during the time that the above events took place. Upon exiting the facility, Ms. Gleason placed a telephone call to undersigned counsel, Kelley Henry for purposes of alerting her to the situation.

23.    Thereafter, undersigned counsel for Henry Hodges contacted RMSI Warden Tony Mays and Centurion Medical employee Kyla Soloman to inquire as to Mr. Hodges status. Ms. Henry provided a release from Mr. Hodges as well as a copy of Mr. Hodges' designation of Ms. Henry as his Medical Power of Attorney.

24.    Ms. Henry asked to be kept informed of Mr. Hodges medical status and to be permitted access to Mr. Hodges at the hospital.

25.    Access to Mr. Hodges by counsel while at the hospital was denied by Defendants during the entirety of his stay.

22.    Mr. Hodges underwent surgical reconstruction for his injury at Vanderbilt on October 7, 2022.

23.   Mr. Hodges remained at Vanderbilt for a period of approximately two weeks.

24.   Mr. Hodges did not exhibit signs of an intent to self-harm or to harm others while at Vanderbilt.

25.   It is currently unknown whether Mr. Hodges received psychotropic medications while at Vanderbilt.

26.   Mr. Hodges was returned to RMSI late in the day on Friday, October 21, 2022.

27.   Immediately upon his return to RMSI, Mr. Hodges was placed on a concrete slab in 4 point restraints in a cell with no television, radio, or any other means of mental stimulation.

28.   Defendants actions triggered Mr. Hodges psychiatric condition.

29.   Mr. Hodges managed to slip a hand out of one restraint and removed his penile catheter.

30.   Thereafter, Mr. Hodges was placed in 6 point restraints.

31.   At approximately 5:20 PM on October 21, 2022, undersigned counsel spoke with Kyla Solomon to inquire about Mr. Hodges condition. Ms. Solomon acknowledge that she was aware that Ms. Henry is Mr. Hodges POA and asked Ms. Henry to forward another copy of the POA by email so that she could forward to Dr. Williams.

32.   Ms. Solomon later confirmed that she had found the POA and that it had been forwarded to Dr. Williams.

33.   At approximately 5:30 PM on October 21, 2022, Associate Warden for

Security Ernest Williams informed Ms. Henry that her request to speak with Mr. Hodges via a speakerphone was denied.

34. At approximately 6:30 PM on October 21, 2022, Defendant Dr. Williams spoke with Ms. Henry by speakerphone.

35. Defendant Williams informed Ms. Henry that Mr. Hodges was refusing to permit staff to clean his wound.

36. Defendant Williams stated that the prison had placed a request to the Treatment Review Committee to determine whether Mr. Hodges was competent to refuse treatment.

37. Dr. Williams then asked Ms. Henry if she would authorize the cleaning of Mr. Hodges wound as Mr. Hodges POA.

38. Ms. Henry stated that she did agree to the cleaning of Mr. Hodges' wound but would not authorize the involuntary use of psychotropic medication under such time as she could consult with a treating mental health provider.

39. Defendant Williams stated that counsel would be permitted to visit Mr. Hodges at the infirmary on Saturday, October 22, 2022.

40. Defendant Williams stated that he had no objection to Ms. Henry speaking with Mr. Hodges by speakerphone.

41. At approximately 8:30 PM, Ms. Henry was permitted to speak with Mr. Hodges. Warden Tony Mays was present and placed his cell phone on speaker so that Mr. Hodges and Ms. Henry could communicate.

42. Mr. Hodges stated that he had agreed to take psychiatric medication.

43.   Mr. Hodges begged Warden Mays to release him from his restraints, stating "I'll do anything you want."

44.   Mr. Hodges begged Ms. Henry to "please, do whatever you have to do to get me out of these restraints. I will do whatever these people want."

45.   Ms. Henry asked Mr. Hodges to promise her not to try to hurt himself or any other person. Mr. Hodges promised that he would not.

46.   At all times since October 21, 2022, Mr. Hodges has been restrained in either 4 point or 6 point restraints.

47.   At all times since October 21, 2022, Mr. Hodges has been deprived of clothing.

48.   At all times since October 21, 2022, Mr. Hodges has been strapped to a vinyl mattress on top of a concrete slab. There are no sheets. The lights are kept on at all times.

49.   Mr. Hodges has not been permitted to attempt to ambulate since October 21, 2022.

50.   Mr. Hodges was left in his own defecation for a significant length of time on October 21, 2022.

51.   Mr. Hodges has refused solid food since October 21, 2022. He is currently on a hunger strike.

52.   Mr. Hodges is taking liquid.

53.   Mr. Hodges has not had a bowel movement since being left in his own excrement on October 21, 2022.

54. Mr. Hodges is currently in pain.

55. Mr. Hodges is unable to move his right leg.

56. Mr. Hodges left side is numb.

57. Mr. Hodges is undergoing extreme psychiatric distress.

58. Mr. Hodges conditions of confinement constitute torture.

59. Mr. Hodges is not able to access the grievance process because of his condition.

60. Repeated requests to remove Mr. Hodges from his restraints and to provide him with clothing have been ignored.

61. On October 26, 2022, Ms. Henry sought a meeting with General Counsel for TDOC Debra Inglis and attorney for Centurion Medical, Bryce Coatney. Ex. 2, Email.

62. Ms. Inglis did not respond to the email request.

63. Mr. Coatney responded that Ms. Inglis was on vacation and that he deferred to her. *Id.*

64. On October 27, 2022, undersigned counsel met with Mr. Hodges in the infirmary. He remained unclothed, but had a blanket over his body. Mr. Hodges begged Ms. Henry to file this complaint.

65. Mr. Hodges believes that the prison is involved in a conspiracy and is attempting to kill him.

66. Undersigned counsel informed counsel for Defendants of her intent to file this complaint and to request a TRO. Ex. 2, Email.

67.    Physical Restraints are to be used as last resort. Ex. 3, Declaration of Dr. Eric Rueth.

68.    Physical Restraints are to be used for a short duration. *Id.*

69.    Use of physical restraints by Defendants here is inhumane. *Id.*

70.    Use of physical restraints by Defendants here violates the standard of care in the medical and mental health community. *Id.*

71.    Defendants' actions constitute deliberate indifference to a known medical need. *Id.*

72.    Defendants' actions constitute deliberate indifference to a known psychiatric need. *Id.*

VI.    Causes of Action

Count 1:  Failure to Provide Adequate Medical and Mental Health Treatment in violation of the Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32; Article VI, § 2 of the United States Constitution, the Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and state and federal law.

73.    Plaintiff incorporates paragraphs 1-72 as if fully incorporated herein.

74.    Defendants by their actions and inaction have violated Mr. Hodges rights to competent medical and mental health care. Estelle v. Gamble, 429 U.S. 97, 104-05; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Count 2: Cruel and Unusual Punishment in violation of the Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32; Article VI, § 2 of the United States Constitution, the Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and state and federal law.

75.    Plaintiff incorporates paragraphs 1-74 as if fully incorporated herein.

10

76.    Defendants by their actions and inaction have violated Mr. Hodges rights to

be free from cruel and unusual punishment.

> Count 3: Intentional infliction of emotional distress in violation of the
> Tennessee Constitution Article 1, §§ 2, 8, 16, 17, 32; Article VI, § 2 of the
> United States Constitution, the Eighth, and Fourteenth Amendments to
> the United States Constitution, 42 U.S.C. § 1983, and state and federal
> law.

77.    Plaintiff incorporates paragraphs 1-76 as if fully incorporated herein.

78.    Defendants by their actions and inaction have caused extreme mental

emotional distress to Mr. Hodges. Defendants' actions rise to the level of torture.

> Count 4: Due process denial of liberty interest to be free from physical
> restraint in violation of the Tennessee Constitution Article 1, §§ 2, 8, 16,
> 17, 32; Article VI, § 2 of the United States Constitution, the Eighth, and
> Fourteenth Amendments to the United States Constitution, 42 U.S.C. §
> 1983, and state and federal law.

79.    Plaintiff incorporates paragraphs 1-78 as if fully incorporated herein.

80.    Defendants by their actions have deprived Mr. Hodges of his liberty intereste

to be free from unconstitutional restraint without due process of law.

VII.    Prayers for Relief

Plaintiff seeks Declaratory, equitable, and injunctive relief. Specifically, Mr.

Hodges prays this Court to:

1.    Declare that Defendants actions and inaction constitute deliberate

indifference.

2.    Declare that Defendants actions and inaction violate Plaintiff's rights

to competent medical and mental health treatment.

3.    Declare that Defendants actions and inaction violate Plaintiff's rights

11

to be free from cruel and unusual treatment.

4.     Declare that Defendants actions and inaction violate Plaintiff's due process liberty interest to be free from unconstitutional restraint.

5.     Declare that Defendants actions and inaction have caused Plaintiff extreme emotional and psychiatric distress.

6.     Order Defendants to release Mr. Hodges from his physical restraints.

7.     Order Defendants to provide Mr. Hodges clothing.

8.     Order Defendants to keep Mr. Hodges in a room where he is able to receive mental stimulation.

9.     Order Defendants to adjust the lighting in his confined space in such a way as to permit sleep.

10.     Appoint an independent monitor of Mr. Hodges medical and mental health treatment.

11.     Order Defendants to preserve any and all evidence relevant to this complaint.

12.     Conduct an emergency hearing for a temporary restraining order.

13.     Any and all relief this Court deems fair and just.

Respectfully submitted this 28th day of October, 2022.

FEDERAL PUBLIC DEFENDER FOR THE
MIDDLE DISTRICT OF TENNESSEE

KELLEY J. HENRY
Supervisory Asst. Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265

*/s/ Kelley J. Henry*
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on October 28, 2022, I emailed a copy of the foregoing to

opposing counsel:

Scott Sutherland, Deputy Attorney General
Office of the Attorney General and Reporter
Law Enforcement and Special Prosecutions Division
P.O. Box 20207
Nashville, Tennessee 37202-0207.

*/s/ Kelley J .Henry*
Counsel for Plaintiff

13



Retail

U.S. POSTAGE PAID
USPS Ground Advtg
NASHVILLE, TN 37209
JUL 12, 2023

45202

**$0.00**

RDC 01    3 Lb 1.70 Oz    R2305E124474-59

Jon D. Hall # 238941
R.M.S.I. U-2-A-204
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209

RECEIVED

JUL 1 4 2023

DEBORAH S. HUNT, Clerk

Chief Deputy Clerk,
C/O Case Mgr. Michelle R. Lambert
100 East 5th Street, Room 540
Potter-Stewart Courthouse
Cincinnati, Ohio 45202-3988

LEGAL MAIL: No. 23-5119

RECEIVED
JUL 1 2 2023
RMSI MAILROOM
OUTGOING LEGAL

USPS TRACKING® #

9534 6158 0483 3193 0055 71